**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff – Appellant / Cross – Appellee,*

v.

DEVONTE DEVON JACKSON,

*Defendant – Appellee / Cross – Appellant.*

Nos. 25-6214
25-6470

D.C. No. 2:25-cr-00240-GMN-BNW-1

OPINION

UNITED STATES OF AMERICA,

*Plaintiff – Appellant / Cross – Appellee,*

v.

GIANN ICOB SALAZAR DEL REAL,

*Defendant – Appellee / Cross – Appellant.*

Nos. 25-6223
25-6475

D.C. No. 2:25-cr-00227-JAD-BNW-1

UNITED STATES OF AMERICA,

*Plaintiff – Appellant / Cross – Appellee,*

v.

JORGE ENRIQUEZ, Jr.,

*Defendant – Appellee / Cross – Appellant.*

Nos. 25-6224
24-6465

D.C. No.
3:25-cr-00026-
MMD-CLB-1

Appeal from the United States District Court
for the District of Nevada
David G. Campbell, Senior District Judge, Presiding

Argued and Submitted February 12, 2026
San Francisco, California

Filed August 17, 2026

Before: Sidney R. Thomas and Eric D. Miller, Circuit Judges, and Stanley Blumenfeld, Jr., District Judge.*

Opinion by Judge Miller

* The Honorable Stanley Blumenfeld, Jr., United States District Judge for the Central District of California, sitting by designation.

## SUMMARY[**]


### Criminal Law

The panel affirmed the district court's order disqualifying Sigal Chattah, the putative Acting United States Attorney for the District of Nevada, from supervising the prosecutions of the defendants in three cases; and dismissed for lack of appellate jurisdiction defendants' cross-appeals from the district court's denial of their motions to dismiss their indictments.

These cases presented the question whether the Attorney General can make someone an Acting U.S. Attorney—bypassing the usual requirement that a U.S. Attorney be confirmed by the Senate—by designating that person as the first assistant to an already-vacant office of U.S. Attorney.

The panel held that the Attorney General cannot do so. Although the Federal Vacancies Reform Act of 1998 (FVRA) provides that a first assistant automatically succeeds to a vacant office, that rule of automatic succession applies only to a first assistant who held that position at the time the vacancy arose; it does not apply to a first assistant who never served under a validly appointed official. Nor can the Attorney General create a de facto Acting U.S. Attorney by delegating all of the functions and duties of the U.S. Attorney to someone else. The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office," so it


[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

prohibits a complete delegation of all of the U.S. Attorney's powers to a single person.

The panel dismissed for lack of appellate jurisdiction the defendants' interlocutory cross-appeals from the denial of their motions to dismiss the indictment. The defendants argued that this court has pendent appellate jurisdiction because their cross-appeals are inextricably intertwined with or necessary to ensure meaningful review of the government's appeals. Because whether Chattah was lawfully appointed the Acting U.S. Attorney or lawfully delegated the functions of that office does not dictate the remedy to which defendants are entitled for an unlawful appointment, review of one order does not require review of the other, and the panel lacked jurisdiction over the cross-appeals.

## COUNSEL

Tyler A. Lee (argued), Attorney, Criminal Division; Josh A. Goldfoot, Deputy Assistant Attorney General; Matthew R. Galeotti, Acting Assistant Attorney General; A. Tysen Duva, Assistant Attorney General; Henry C. Whitaker, Counselor to the Attorney General; Stanley Woodward, Associate Attorney General; Todd Blanche, Deputy Attorney General; Pamela J. Bondi, Attorney General; United States Department of Justice, Washington, D.C.; Randolph J. St. Clair, Assistant United States Attorney, Office of the United States Attorney, United States Department of Justice, Reno, Nevada; Daniel R. Schiess, Assistant United States Attorney; Adam M. Flake, Assistant United States Attorney, Chief, Appellate Division; Sigal

Chattah, Acting United States Attorney, First Assistant United States Attorney; Office of the United States Attorney, United States Department of Justice, Las Vegas, Nevada; for Plaintiffs-Appellees.

Jeremy C. Baron (argued), Rick A. Mula, Heidi A. Ojeda, and Sean A. McClelland, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Defendant-Appellant.

James I. Pearce (argued), Samantha P. Bateman, Mary L. Dohrmann, and Nathaniel A.G. Zelinsky, Washington Litigation Group, Washington, D.C., for Amici Curiae Nevada Attorneys for Criminal Justice and National Association of Criminal Defense Lawyers.

Thomas A. Berry, Cato Institute, Washington, D.C., for Amicus Curiae Cato Institute.

---

## OPINION

MILLER, Circuit Judge:

These cases present the question whether the Attorney General can make someone an Acting United States Attorney—bypassing the usual requirement that a U.S. Attorney be confirmed by the Senate—by designating that person as the first assistant to an already-vacant office of U.S. Attorney. We hold that the Attorney General cannot do so. Although the Federal Vacancies Reform Act of 1998 (FVRA) provides that a first assistant automatically succeeds to a vacant office, that rule of automatic succession

applies only to a first assistant who held that position at the time the vacancy arose; it does not apply to a first assistant who never served under a validly appointed official. 5 U.S.C. § 3345(a)(1). Nor can the Attorney General create a de facto Acting U.S. Attorney by delegating all of the functions and duties of the U.S. Attorney to someone else. The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office," so it prohibits a complete delegation of all of the U.S. Attorney's powers to a single person. *Id.* § 3347.

Applying those principles, we affirm the district court's order disqualifying Sigal Chattah, the putative Acting U.S. Attorney for the District of Nevada, from supervising the prosecutions of the defendants in these cases. We dismiss defendants' cross-appeals because we lack appellate jurisdiction to review the district court's denial of defendants' motions to dismiss their indictments.

## I

On January 17, 2025, Jason Frierson resigned as the U.S. Attorney for the District of Nevada. At that time, First Assistant U.S. Attorney Sue Fahami became the Acting U.S. Attorney by operation of the FVRA, which provides that upon the resignation of a Senate-confirmed officer, "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1).

Two months later, the Attorney General invoked 28 U.S.C. § 546 to appoint Sigal Chattah as the interim U.S. Attorney for the District of Nevada, effective April 1. That statute permits the Attorney General to appoint an interim U.S. Attorney when the position of U.S. Attorney is vacant,

*id.* § 546(a), but limits the service of an interim U.S. Attorney to a term of 120 days, *id.* § 546(c)(2). Chattah's 120-day term would have expired on July 30.

On July 28, Chattah resigned as the interim U.S. Attorney. In her resignation letter, she stated that she "look[ed] forward to continuing to lead the U.S. Attorney's Office for the District of Nevada." The same day, the Attorney General designated Chattah as the First Assistant U.S. Attorney for the District of Nevada. In the designation order, the Attorney General asserted that "[a]s First Assistant United States Attorney, Ms. Chattah will have authority to serve as Acting United States Attorney upon a vacancy in that office" by operation of the FVRA. At the same time, the Attorney General also appointed Chattah "as a Special Attorney to the United States Attorney General pursuant to 28 U.S.C. § 515" and authorized her "to conduct in the District of Nevada, any kind of legal proceedings, civil or criminal, . . . which United States Attorneys are authorized to conduct."

The defendants in these consolidated cases were indicted on felony charges in the District of Nevada on or after July 29, 2025. Each of the indictments was signed by an Assistant U.S. Attorney, not by Chattah herself, but each included her name in the signature block and identified her as the "Acting United States Attorney." Defendants moved to dismiss their indictments or, in the alternative, to disqualify Chattah and any Assistant U.S. Attorneys working under her supervision from prosecuting their cases. Defendants argued that Chattah's appointment as the Acting U.S. Attorney violated the FVRA and therefore that their indictments were invalid.

Chief Circuit Judge Mary H. Murguia designated Senior United States District Judge David G. Campbell of the

District of Arizona to sit in the District of Nevada, and the cases were assigned to him.

The district court denied the motion to dismiss the indictments. The district court first concluded that Chattah was not eligible to serve as the Acting U.S. Attorney because she was not the first assistant at the time the position of U.S. Attorney became vacant. Further, because the FVRA's exclusivity clause, 5 U.S.C. § 3347(a), makes the FVRA "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency," the district court concluded that Chattah could not exercise all of the powers of the U.S. Attorney by delegation from the Attorney General. The district court thus disqualified Chattah from participating in or supervising the prosecution of defendants' cases. The district court concluded, however, that the Assistant U.S. Attorneys who signed the indictments derived their power to prosecute "not from the U.S. Attorney but from the Attorney General," and that "Chattah's lack of authority to serve as U.S. Attorney" therefore did not "warrant[] dismissal of the indictments."

The maneuvers used to extend Chattah's time atop the U.S. Attorney's Office are not unique to the District of Nevada. The Attorney General has employed similar—though not always identical—tactics to extend the service of other temporary appointees who have not been confirmed by the Senate. The district court's reasoning was consistent with that of the other courts to consider those tactics, every one of which has concluded that they violate the limits imposed by the FVRA. *See United States v. Giraud*, 160 F.4th 390, 400–01 (3d Cir. 2025); *United States v. Ramirez*, 807 F. Supp. 3d 1086, 1105 (C.D. Cal. 2025); *United States v. James*, 810 F. Supp. 3d 752, 762–63 (E.D. Va. 2025), *appeal docketed*, No.

25-4673 (4th Cir. Dec. 22, 2025); *United States v. Comey*, 810 F. Supp. 3d 768, 780 (E.D. Va. 2025), *appeal docketed*, No. 25-4674 (4th Cir. Dec. 22, 2025); *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*, 814 F. Supp. 3d 284, 292 (N.D.N.Y. 2026), *appeal docketed*, No. 26-156 (2d Cir. argued May 4, 2026); *United States v. Ramirez-Martinez*, No. 22-cr-01721, 2026 WL 113431, at *15 (D.N.M. Jan. 14, 2026).

The government now appeals, challenging the disqualification order. Defendants cross-appeal, challenging the denial of their motions to dismiss. We have jurisdiction to review the disqualification order under 28 U.S.C. § 1291, *see United States v. Williams*, 68 F.4th 564, 570 (9th Cir. 2023), but we lack jurisdiction over the cross-appeals.

The President has not nominated Chattah to serve as the U.S. Attorney for the District of Nevada. On February 11, 2026, the day before we heard oral argument in these appeals, the President nominated George Kelesis for that position. Nominations Submitted to the Senate, 2026 Daily Comp. Pres. Doc. Supp. 7 (updated Feb. 13, 2026), *available at* 2026 WL 487918, at *5.

## II

The government argues that when the Attorney General designated Chattah as the first assistant to the vacant office of U.S. Attorney, section 3345(a)(1) automatically elevated her to Acting U.S. Attorney. But section 3345(a)(1) does not apply to an official who, like Chattah, was not serving as the first assistant at the time the vacancy arose. In the alternative, the government argues that Chattah may exercise all of the powers of the U.S. Attorney by delegation from the Attorney General. But the FVRA is "the exclusive means for temporarily authorizing an acting official to perform the

functions and duties of any office of an Executive agency." 5 U.S.C. § 3347(a). The Attorney General therefore cannot rely on general delegation statutes to make Chattah the de facto U.S. Attorney.

A

We begin by reviewing the different sources of law governing the appointment and service of U.S. Attorneys and Acting U.S. Attorneys.

The Appointments Clause provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States . . . but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. The Appointments Clause "prescribes the exclusive means of appointing 'Officers,'" the subset of federal personnel who "'exercis[e] significant authority pursuant to the laws of the United States.'" *Lucia v. SEC*, 585 U.S. 237, 244–45 (2018) (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)).

By dividing responsibility between the President and the Senate, the Appointments Clause functions as "a bulwark against one branch aggrandizing its power at the expense of another branch." *Ryder v. United States*, 515 U.S. 177, 182 (1995). The Framers vested the President with the power to nominate officers, reasoning that the President "would be less vulnerable to interest-group pressure and personal favoritism than would a collective body." *Edmond v. United States*, 520 U.S. 651, 659 (1997). But the President's power "was not left unguarded," as appointments require the advice and consent of the Senate. *Id.* The Framers feared that the President might seek to appoint "candidates who had no

other merit, than that . . . of being in some way or other personally allied to [the President], or of possessing the necessary insignificance and pliancy to render them the obsequious instruments of his pleasure," and they saw the Senate's advice-and-consent function as necessary to "prevent[] the appointment of unfit characters" to federal office. The Federalist No. 76, at 513 (Alexander Hamilton) (Jacob E. Cooke ed., 1961).

The Appointments Clause "divides all its officers into two classes": principal officers and inferior officers. *United States v. Germaine*, 99 U.S. 508, 509 (1879). In general, principal officers are those who "report directly to the President," such as the Attorney General. *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 761 (2025). Such officers must be nominated by the President and confirmed by the Senate. *Id.* at 759. Inferior officers are those "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Edmond*, 520 U.S. at 663. The advice-and-consent process is the "default manner of appointment for inferior officers," *id.* at 660, but Congress may choose to vest the appointment of such officers "in the President alone, in the Courts of Law, or in the Heads of Departments," U.S. Const. art. II, § 2, cl. 2. This allows Congress to select an alternative manner of appointment if it finds that "administrative convenience" outweighs "the benefits of the more cumbersome procedure" of advice and consent for that office. *Edmond*, 520 U.S. at 660.

U.S. Attorneys "are clearly 'officers' of the United States," and because the Attorney General has "plenary authority" to supervise them, they are inferior officers. *United States v. Gantt*, 194 F.3d 987, 999 (9th Cir. 1999), *overruled on other grounds by United States v. W.R. Grace*,

526 F.3d 499 (9th Cir. 2008) (en banc); *see Myers v. United States*, 272 U.S. 52, 159 (1926). But Congress has not chosen to vest the appointment of U.S. Attorneys in the President, the courts, or the Attorney General. Instead, it has specified that the "President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a); *accord* Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 73, 92. As then–Attorney General Robert Jackson explained, that choice reflects a recognition that because U.S. Attorneys exercise the "immense power to strike at citizens . . . with all the force of government itself," they should "win an expression of confidence in [their] character by both the legislative and the executive branches of the government before assuming the responsibilities of a federal prosecutor." Robert H. Jackson, Att'y Gen., *The Federal Prosecutor*, Address at the Second Annual Conference of United States Attorneys (Apr. 1, 1940).

Because occasional vacancies in office are inevitable, both Congress and the courts have long recognized that a "subordinate officer" may assume the duties of a principal officer "for a limited time, and under special and temporary conditions," without "transform[ing] into the superior and permanent official." *United States v. Eaton*, 169 U.S. 331, 343 (1898); *see, e.g.*, Act of July 23, 1868, ch. 227, §§ 1–2, 15 Stat. 168, 168 (codified as amended at 5 U.S.C. § 3345). As relevant here, Congress has enacted two statutes that allow the temporary filling of vacant U.S. Attorney positions.

First, 28 U.S.C. § 546 allows the Attorney General to appoint an interim U.S. Attorney. Section 546 reflects a balance that Congress has adjusted over time. Between 1863 and 1985, only the federal courts could appoint an interim

U.S. Attorney. *See* Act of Mar. 3, 1863, ch. 93, § 2, 12 Stat. 768, 768 (authorizing circuit judges to appoint an interim U.S. Attorney); Act of June 24, 1898, ch. 495, § 2, 30 Stat. 487, 487–88 (transferring this power to the district courts) (codified as amended at 28 U.S.C. § 546(d)). In 1986, Congress granted the Attorney General the authority to appoint interim U.S. Attorneys. Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646, § 69, 100 Stat. 3592, 3616–17 (codified as amended at 28 U.S.C. § 546). But that authority is limited: Unlike an interim U.S. Attorney appointed by the district court, an interim U.S. Attorney appointed by the Attorney General may serve for a maximum of 120 days. 28 U.S.C. § 546(c). Congress briefly removed that time limit in 2006 but reimposed it in 2007. USA Patriot Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 502, 120 Stat. 192, 246 (2006); Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, § 2, 121 Stat. 224.

After the 120-day appointment expires, section 546 provides that "the district court for such district" may appoint an interim U.S. Attorney to serve "until the vacancy is filled." 28 U.S.C. § 546(d). The statute does not contemplate a role for the President or the Attorney General after the expiration of the 120-day appointment. To the contrary, the Executive Branch has long recognized that "[t]he statutory plan discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court rather than by the Attorney General." Memorandum from Samuel A. Alito, Jr., Deputy Assistant Att'y Gen., Off. of Legal Couns., to William P. Tyson, Dir., Exec. Off. for U.S. Att'ys 3 (Nov. 13, 1986), *available at* https://perma.cc/Y3C6-HVMY.

Section 546(a) ensures that the Attorney General can select someone to fill the role of U.S. Attorney temporarily so that the work of the U.S. Attorney's Office continues uninterrupted. But the 120-day time limit of section 546(c)(2) ensures that the Senate retains its role in the appointment process despite the occasional designation of temporary officers.

Second, the FVRA creates a general procedure for "temporarily authorizing an acting official to perform the functions and duties" of an office, including that of a U.S. Attorney, if the officeholder "dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. §§ 3345, 3347(a). An acting official under the FVRA may serve for 210 days "beginning on the date the vacancy occurs," with the possibility of extensions in the case of a prolonged Senate confirmation process—longer than an interim U.S. Attorney. *See* 5 U.S.C. § 3346. But unlike an interim U.S. Attorney, who may be almost anyone the Attorney General chooses, *see* 28 U.S.C. § 546(b), an Acting U.S. Attorney must come from one of three categories of individuals.

By default, the "first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1). The FVRA itself does not define "first assistant." Instead, the first assistant is identified by statute for some positions, *see, e.g.*, 28 U.S.C. § 508(a) (identifying the Deputy Attorney General as the first assistant to the Attorney General), and by regulation for many others, *see, e.g.*, 28 C.F.R. § 0.137 (defining first assistants for other Department of Justice positions). The FVRA also provides that "the President (and only the President)" may select one of two alternatives to the first assistant, both subject to the time

limitations in section 3346: either another Senate-confirmed official, 5 U.S.C. § 3345(a)(2), or a senior agency employee, *id.* § 3345(a)(3).

An administration may "elect between [the] two statutory alternatives" of the FVRA and an agency-specific statute like section 546 to designate a temporary official. *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016). But the FVRA makes clear that statutes that provide "general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency" do not supplant the procedures prescribed in the FVRA. 5 U.S.C. § 3347(b). In other words, "a department head cannot rely on a general vesting-and-delegation statute to designate the acting officer in the event of a vacancy." *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. United States Dep't of Homeland Sec.*, 107 F.4th 1064, 1078 (9th Cir. 2024).

B

The government's primary argument on appeal is that Chattah automatically became the Acting U.S. Attorney under the FVRA when the Attorney General designated her as the first assistant to the vacant office of U.S. Attorney. The district court rejected that theory, concluding that "subsection (a)(1) operates only on first assistants in place when vacancies begin." We agree. The FVRA's text and structure are unambiguous: The statute does not permit the executive to fill an existing vacancy by designating a new first assistant.

1

"As always, we begin with the text." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022). "If an officer . . . dies, resigns, or is otherwise unable to perform the functions and duties of the office," the FVRA provides that "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(1). Section 3346(a)(1) provides that "the person serving as an acting officer as described in section 3345 may serve in the office . . . for no longer than 210 days beginning on the date the vacancy occurs." *Id.* § 3346(a)(1).

Section 3345(a)(1) uses a mandatory "shall," which means that the first assistant is "automatically" elevated in the event of a vacancy. *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017). The automatic succession of the first assistant, which the Supreme Court has described as "self-executing," *id.* at 303, occurs at the "single, immediate" moment at which the vacancy arises, *Giraud*, 160 F.4th at 398. The only first assistant whom section 3345(a)(1) can automatically elevate is the first assistant serving at the time the vacancy begins.

This understanding of the statute is confirmed by Congress's use of the definite article—"*the* first assistant"—in section 3345(a)(1), which indicates that only one first assistant is subject to immediate, automatic elevation. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). Unlike subsections (a)(2) and (a)(3), which use indefinite articles to refer to an "unspecified" group of potential acting officials, subsection (a)(1) contemplates only one individual: the first assistant serving at the time the vacancy arises. *See McFadden v. United States*, 576 U.S. 186, 191 (2015).

Nothing in subsection (a)(1) suggests that the executive has the continuing authority to appoint—and immediately elevate—new first assistants once a vacancy already exists.

Section 3346 reinforces our conclusion that only a first assistant in place when the vacancy arises is automatically elevated. Rather than measuring the permissible period of acting service from the date a particular individual assumes the acting role, Congress measured it from "the date the vacancy occurs." 5 U.S.C. § 3346(a)(1). Under the government's reading, section 3345(a)(1) would operate not as a one-time automatic-succession provision, but as a continuing appointment mechanism that permits the successive automatic elevation of post-vacancy first assistants whenever another acting official ceases serving, so long as no new Senate-confirmed officer has been appointed. That reading severs the automatic-succession provision from the event that starts the statutory clock, which begins on a particular date: "the date the vacancy occurs." This case illustrates the point. The vacancy occurred on January 17, 2025, and the 210-day period prescribed by section 3346(a)(1) began to run on that date. Yet the government contends that the automatic succession contemplated by section 3345(a)(1) did not occur until July 28—192 days later—when Chattah became first assistant. The FVRA provides no textual basis for delaying the automatic succession for so long after the event that triggered both the succession provision and the statutory clock.

The government resists this reading, pointing to the statute's use of the present tense ("is otherwise unable") and its lack of what the government calls the "backward-looking language" that is present in other provisions of the FVRA. Neither aspect of the statute supports the government's interpretation.

First, the government argues that the use of the present tense "*is* otherwise unable" means that the statute elevates the first assistant at any point in time at which a validly appointed officer "is otherwise unable to perform the functions and duties of the office"—not just at the time the vacancy first occurs. 5 U.S.C. § 3345(a). Although we "frequently look[] to Congress' choice of verb tense to ascertain a statute's temporal reach," *Carr v. United States*, 560 U.S. 438, 448 (2010), we cannot read the "is otherwise unable" clause in isolation. The statute automatically elevates the first assistant when an officer "dies, resigns, or is otherwise unable to perform." 5 U.S.C. § 3345(a). "Dies" and "resigns" are both present-tense verbs that refer to a "single instance." *Giraud*, 160 F.4th at 398. Although "is otherwise unable" could literally carry a broader meaning, we "discern the reach of an 'otherwise' clause" by looking to the "terms linked to it," which provide "a more focused meaning." *Fischer v. United States*, 603 U.S. 480, 487–88 (2024). Here, "dies" and "resigns" suggest that "is otherwise unable" likewise refers to the discrete moment in time at which a validly appointed official *becomes* unable to perform his duties. It is at that moment that the first assistant is automatically elevated by the "mandatory and self-executing" process defined in section 3345(a)(1). *SW Gen.*, 580 U.S. at 303. That is consistent with section 3346, which measures the time limit for active service from "the date the vacancy occurs," a discrete moment. 5 U.S.C. § 3346(a)(1). Read in context, the use of the present tense throughout the statute suggests there is only one triggering event: the moment at which the office becomes vacant.

Second, the government cites the absence of any "backward-looking language" in section 3345(a)(1). It points out that subsection (a)(3) permits the President to

designate, as an acting officer, a senior official of the agency who has held his or her position "for not less than 90 days" in the prior year. 5 U.S.C. § 3345(a)(3). The government reasons that "[i]f Congress were concerned about allowing recently-appointed first assistants to serve as acting officers, it could have similarly limited § 3345(a)(1) as it did (a)(3)." But subsection (a)(3) includes screening requirements precisely because it allows the President to select from a pool of people eligible for the appointment. Subsection (a)(1), by contrast, contemplates no role for the executive; instead, it "automatically" elevates the first assistant at the moment of the vacancy. *SW Gen.*, 580 U.S. at 305. There is no need for "backward-looking language" in a provision that operates automatically and does not allow the President to choose among potential appointees.

Subsection (b), which limits acting service by nominees to an office, does not support the government's argument either. Section 3345(b)(1)(A)(ii) provides that a person who has been nominated to an office may not serve as an acting officer for "such office" if that person has "served in the position of first assistant . . . for less than 90 days." The government argues that this language "logically contemplates that someone who was *not* the first assistant at the time of the vacancy can still be serving as the acting official under (a)(1)." We do not see how the possibility of a first assistant appointed less than 90 days *before* a vacancy "logically contemplates" first assistants nominated *after* the vacancy. As the Supreme Court explained in *SW General*, subsection (b)(1)'s prohibition on acting service by nominees "applies to all acting officers," whether they are acting under subsection (a)(1), (a)(2), or (a)(3). 580 U.S. at 306. Congress's decision to carve out first assistants who meet certain tenure requirements from that general

prohibition does not say anything about whether the statute elevates post-vacancy first assistants.

2

Our reading of section 3345(a)(1) is confirmed by the structure of the FVRA as a whole. Whenever possible, we interpret statutes so that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *accord City of Chicago v. Fulton*, 592 U.S. 154, 159 (2021). The government's interpretation of section 3345 would render large portions of the FVRA superfluous.

The FVRA does not expressly give agency heads any power to appoint acting officers, instead providing that "the President (and only the President)" may select them under section 3345(a)(2) and (a)(3). Those subsections, which include precise eligibility requirements, offer the only "two ways the President may override the automatic operation of (a)(1)." *Hooks*, 816 F.3d at 557.

On the government's reading, however, any agency head could circumvent the limitations imposed by subsections (a)(2) and (a)(3) simply by designating a preferred appointee as the first assistant to a vacant position. Thus, if the government's interpretation were correct, the carefully calibrated limits imposed by subsections (a)(2) and (a)(3) would be insignificant, if not entirely superfluous. First assistants elevated under subsection (a)(1) need not hold a Senate-confirmed office, like those designated under (a)(2); they need not have any prior experience in the agency, like those designated under (a)(3); and they need not be selected by the President, like those designated under both (a)(2) and (a)(3). The government's reading of subsection (a)(1) would allow an agency head "to, in effect, appoint almost anyone"

by installing that person as a first assistant, *Giraud*, 160 F.4th at 399, which is more discretion than Congress conferred on the President in subsections (a)(2) and (a)(3). We cannot accept an interpretation that "renders an unnerving amount of statutory text mere surplusage." *Fischer*, 603 U.S. at 498.

The government suggests that, even under its reading, subsections (a)(2) and (a)(3) would still be useful in a handful of scenarios. If the first assistant must be confirmed by the Senate or appointed by the officer, the executive would not be able to unilaterally select its preferred candidate for that post. *See, e.g.*, 28 U.S.C. § 504 (requiring Senate confirmation of the Deputy Attorney General); 44 U.S.C. § 2103(c) (providing that the Archivist of the United States "shall" appoint the Deputy Archivist). Or the President might wish to leave the current first assistant in place, in which case it would be necessary to use subsections (a)(2) or (a)(3) to select a different acting officer.

These possibilities "would seem to be a rare circumstance." *Giraud*, 160 F.4th at 399. Only four statutes expressly assign the title of "first assistant" to Senate-confirmed officers. *See* 6 U.S.C. § 113(a)(1)(A), (F); 7 U.S.C. § 2211; 10 U.S.C. § 137a(b); 28 U.S.C. § 508(a). A few other Cabinet-level officers have Senate-confirmed deputies who function as their first assistants, though the statutes do not use that term. *See, e.g.*, 31 U.S.C. § 301(c)(2) (Deputy Secretary of the Treasury); 43 U.S.C. § 1452 (Deputy Secretary of the Interior). But for the vast majority of Senate-confirmed officers, first assistants are designated by regulation, often with little specificity. For example, of the more than 200 officers of the Department of Justice who must be confirmed by the Senate, only two—the Attorney General and the Administrator of the Drug Enforcement

Administration—have first assistants who themselves require Senate confirmation. *See* S. Comm. on Homeland Sec. & Governmental Affs., *United States Government Policy and Supporting Positions* (2025). For many of the remaining offices, the first assistant is simply "the person whom the Attorney General designates." 28 C.F.R. § 0.137(b). Other offices have no regulation identifying the first assistant or setting out a selection process for that role; instead, the first assistant is identified by internal agency orders or directives. *See, e.g.*, U.S. Dep't of the Interior, Departmental Manual pt. 135, § 3.2 (July 26, 2016) (designating the Deputy Director, Operations as the first assistant to the Director of the Bureau of Land Management). For those offices, the government's position would render subsections (a)(2) and (a)(3) largely irrelevant.

Even if the government's interpretation finds a role for subsections (a)(2) and (a)(3) in a handful of cases, it "would in practical effect" render them superfluous "in all but the most unusual circumstances." *TRW*, 534 U.S. at 29. Worse, under the government's reading, the only meaningful limitations on a President's power to appoint temporary officers would come from various agency-specific statutes requiring Senate confirmation for first assistants, not from the FVRA itself. Although Congress enacted the FVRA to because it sought "a reclamation of [its] Appointments Clause power," the government's interpretation suggests that the FVRA itself did nothing to safeguard that power. *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 70 (D.C. Cir. 2015), *aff'd*, 580 U.S. 288 (2017). Instead, pre-existing statutes already imposed the only obstacles that might require a President to resort to subsections (a)(2) and (a)(3) to fill a vacancy. But just as Congress does not "hide elephants in mouseholes," *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468

(2001), neither does it place mice in elephant-sized holes. We generally presume that Congress, in amending a statute, intends its changes "to have real and substantial effect." *Ross v. Blake*, 578 U.S. 632, 641–42 (2016) (quoting *Stone v. INS*, 514 U.S. 386, 397 (1995)). If the government were correct, the FVRA would fail to do so, leaving it unexplained why Congress bothered to pass it.

3

Because the statutory text is unambiguous, our analysis could stop here. *See Milner v. Department of the Navy*, 562 U.S. 562, 574 (2011) ("Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it."). But the parties also extensively discuss the legislative history and executive practice under the statute, so we address those matters for the sake of completeness. The legislative history is fully consistent with our conclusion that only first assistants already in place at the time a vacancy arose can serve as acting officers under subsection (a)(1). Thus, even if we were to consider legislative history, it would only reinforce our reading of the statute. And although the government points to some evidence of contrary Executive Branch practice following the passage of the FVRA, that evidence does not persuade us to depart from the unambiguous meaning of the statutory text.

a

The FVRA was enacted in the wake of a sustained period of "interbranch conflict" over temporary appointments. *SW General*, 580 U.S. at 294–95 (citing Morton Rosenberg, Cong. Rsch. Serv., No. 98-892, *The New Vacancies Act: Congress Acts to Protect the Senate's Confirmation Prerogative* 2–4 (1998)). Much of that conflict was instigated by the Department of Justice, which had decided

it was exempt from the statutes governing acting officials and could instead indefinitely appoint acting officials through the Attorney General's power to delegate her functions and duties. *See* S. Rep. No. 105-250, at 3 (1998) (rejecting the Department's position as "wholly lacking in logic, history, or language"). "By 1998, approximately 20 percent" of offices requiring Senate confirmation "were occupied by temporary designees," including some who had been installed "in obvious contravention of the Senate's wishes." *SW General*, 580 U.S. at 295 (internal quotation marks omitted) (quoting Rosenberg, at 1).

The most high-profile incident leading to the passage of the FVRA was President Clinton's 1997 appointment of Bill Lann Lee as Acting Assistant Attorney General for Civil Rights. The President first appointed Lee as the Principal Deputy Assistant Attorney General, a position that made him first assistant to the Acting Assistant Attorney General. The Acting Assistant Attorney General then resigned, allowing Lee to become the acting officer. Many commentators objected, pointing out that Lee never served as "a first assistant to a qualified 'officer'" and arguing that the President could not "'bootstrap' one automatic succession on top of another." Steven J. Duffield & James C. Ho, Note, *The Illegal Appointment of Bill Lann Lee*, 2 Tex. Rev. L. & Pol. 335, 349 (1998). One Senator, who would go on to be one of the original co-sponsors of the FVRA, wrote to the Attorney General to complain that Lee "could not be designated as first assistant after the office was vacant." Letter from Sen. Strom Thurmond to Att'y Gen. Janet Reno 2 (Jan. 23, 1998), *reprinted in Oversight of the Implementation of the Vacancies Act: Hearing Before the S. Comm. on Governmental Affs.*, 105th Cong. 126 (1998). "Perceiving a threat to the Senate's advice and consent

power," *SW Gen.*, 580 U.S. at 295, Congress enacted the FVRA and made it the "exclusive means" for temporarily appointing acting officials, 5 U.S.C. § 3347(a).

That history is itself strong evidence against the government's interpretation of the FVRA, which would allow exactly the kind of maneuver that Congress found objectionable in the case of Bill Lann Lee. And if that were not enough, the Senate committee report accompanying the FVRA made clear that first assistants appointed after a vacancy are not automatically elevated. The report explained that by providing for acting service by the first assistant, subsection (a)(1) allows for "the routine functions of the office . . . to continue for a limited period of time *by that one person*" while the President seeks Senate confirmation of a permanent officer. S. Rep. No. 105-250, at 12 (emphasis added). It went on to state that the FVRA "allows the office to be temporarily filled by 'the person' who was originally eligible to be the acting officer *at the time the vacancy arose*." *Id.* at 15 (emphasis added). This understanding of the FVRA was not limited to the committee majority; the minority views accompanying the report likewise stated that, "aside from another Senate-confirmed Presidential appointee designated by the President, only the 'first assistant' to the particular Senate confirmed officer who dies, resigns, or is other[wise] unable to perform the functions and duties of the position, can be an acting officer." *Id.* at 34 (Minority Views). Nothing in either the report or the minority views suggests that the first assistant elevated by subsection (a)(1) may be anyone other than the "one person" in office at the time the vacancy arose.

A post-committee amendment to the FVRA further confirms that Congress understood the statute to require the first assistant to be in place when the vacancy occurs. As

reported out of committee, the FVRA did not include section 3345(a)(3). The report noted the possibility that there might be "no first assistant," and it acknowledged that in that scenario, "no one is permitted by law to become an acting officer until the President designates a Senate-confirmed individual to be the acting officer" under section 3345(a)(2). S. Rep. No. 105-250, at 13; *see also id.* at 14 ("[I]f there is no first assistant, and no presidential designation, no one may serve as acting officer."). Some Senators were concerned that, upon a change of administrations, "not many first assistants may be holding over" and "the first assistant slots may be empty," 144 Cong. Rec. 22514 (1998) (statement of Sen. Carl Levin), but that "transferring another [Senate-confirmed] person would merely create a new vacancy elsewhere," S. Rep. No. 105-250, at 34 (Minority Views). To address that problem, Congress added subsection (a)(3), which allows the President to appoint senior career staff as acting officers. Senator Fred Thompson, the FVRA's principal author, explained that the change was intended to address concerns that "there will sometimes be vacancies in first assistant positions." 144 Cong. Rec. 27496 (1998) (statement of Sen. Fred Thompson). Neither the problem nor the solution would have made sense if agency heads could simply designate a first assistant after a vacancy arose. Yet no Senator even hinted at the possibility of such a designation. The history of subsection (a)(3) strongly suggests that Congress understood (a)(1) to be limited to the first assistant already in place at the time of the vacancy.

The government insists, however, that the legislative history actually supports its position. It points out that after the FVRA was reported out of committee, section 3345(a)(1) was changed to refer to "the first assistant to the office" rather than "the first assistant of such officer." Citing a floor

statement by Senator Thompson, the government argues that this language was intended to "depersonalize" the first assistant role. 144 Cong. Rec. 27496 (1998). In the government's view, that means that "the first assistant is not limited to one specific person at one specific time."

We find that argument unpersuasive. The committee report anticipated the amendment, explaining that the bill's reference to "the first assistant to the 'officer'" would not change "the practice under current law" of treating the relevant first assistant for subsection (a)(1) as "the first assistant to the vacant office." S. Rep. No. 105-250, at 12. And two sentences after the floor statement that the government quotes, Senator Thompson explained that the change to "first assistant to the office" was "not intended to alter case law on the meaning of the term 'first assistant.'" 144 Cong. Rec. 27496 (1998). The government does not dispute that at the time the FVRA was enacted, there were no examples of post-vacancy appointments of first assistants. *See L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 27–28 (D.D.C. 2020). The government's strained reading of the term "depersonalize" is unsupported by the legislative history, which does not suggest that anyone, at any point, understood the addition of "to the office" to mark a break from that historical practice.

b

What the government describes as "longstanding Executive Branch practice" under the FVRA gives us no reason to depart from the text's unambiguous meaning. The government relies on an opinion of the Justice Department's Office of Legal Counsel (OLC) interpreting the FVRA to allow for the appointment of a first assistant after a vacancy arises. We recognize that we may consider the

"interpretations of those responsible for implementing particular statutes," particularly when those interpretations are "issued contemporaneously with the statute" and "have remained consistent over time." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). But the OLC opinion is inconsistent with earlier executive interpretations of the statute, and it relies on reasoning that has since been rejected. We therefore accord it—and executive practice following it—no weight.

Shortly after the FVRA was enacted, OLC issued an opinion concluding that "the better understanding is that you must be the first assistant when the vacancy occurs in order to be the acting officer by virtue of being the first assistant." *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 64 (1999). The Government Accountability Office (GAO) agreed with OLC's interpretation, issuing guidance stating that acting officers should be required to produce dated documents "to verify that the position (and individual) was designated as first assistant prior to the occurrence of the vacancy." U.S. Gov't Accountability Off., GAO-01-468R, *Eligibility Criteria for Individuals to Temporarily Fill Vacant Positions Under the Federal Vacancies Reform Act of 1998*, at 2 (Feb. 23, 2001).

In 2001, however, OLC reversed course, concluding that first assistants may be elevated at any point after the vacancy arises. *Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177, 180 (2001). The GAO followed OLC's reversal, adopting OLC's new position without independent analysis. U.S. Gov't Accountability Off., GAO-02-272R, *Changed Interpretation of Requirements Related to First Assistants Under the Federal Vacancies Reform Act of 1998*, at 2 (Dec. 7, 2001).

The 2001 OLC opinion relied on two arguments. The first was the reference in the statute to "the first assistant to the office of such officer." 25 Op. O.L.C. at 179–80 (citing 5 U.S.C. § 3345(a)(1)). We have explained above why this language says nothing about whether a first assistant may be appointed after a vacancy arises. The second was OLC's view that limiting subsection (a)(1) to the first assistant serving at the time of the vacancy would render superfluous subsection (b)(1)(A)(i), which restricts acting service by individuals who have been nominated for an office. *Id.* at 180. OLC's argument relied on an assumption that subsection (b)(1)(A)(i) applies only to acting officers appointed under subsection (a)(1), but the Supreme Court squarely rejected that theory in *SW General*, 580 U.S. at 305. Given the "[in]validity of its reasoning" and "its [in]consistency with earlier . . . pronouncements," we conclude that the 2001 OLC opinion is entitled to no weight. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see Loper Bright Enters.*, 603 U.S. at 394.

Apart from the OLC opinion, the government argues that Congress has accepted the executive's position because it "has made no attempt to amend [section 3345(a)(1)] in the past two decades to curtail this common Executive Branch practice." To overcome "the plain text and original understanding of a statute," the government must present "overwhelming evidence of acquiescence." *Solid Waste Agency of N. Cook Cnty. v. United States Army Corps of Eng'rs*, 531 U.S. 159, 169 n.5 (2001). The government's evidence here is profoundly underwhelming, consisting of only three examples. In *SW General*, by contrast, the government pointed to 112 nominations over a 19-year period, but the Supreme Court deemed even that evidence insufficient, concluding that "Congress's failure to speak up

does not fairly imply that it has acquiesced in the [executive's] interpretation." 580 U.S. at 308. If "historical practice" was "too grand a title for the [executive's] evidence" in *SW General*, we cannot imagine what label would be appropriate for the meager evidence the government has marshaled here. *Id.* That the executive has evaded the statute on a handful of occasions does not allow us to conclude that Congress has acquiesced in those violations.

C

Although Chattah was not lawfully serving as the Acting U.S. Attorney, the government argues that the Attorney General validly delegated to her the authority to oversee the U.S. Attorney's office. That argument is foreclosed by the FVRA's exclusivity provision. 5 U.S.C. § 3347(a). The general delegation statutes governing the Department of Justice do not allow the Attorney General to appoint Chattah as a de facto U.S. Attorney despite her ineligibility under the FVRA.

We begin, as before, with the statutory text. The FVRA specifies that "Sections 3345 and 3346 [of the FVRA] are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate." 5 U.S.C. § 3347(a). It acknowledges that other statutes, such as 28 U.S.C. § 546, may "expressly" authorize an agency head to "designate an officer or employee to perform the functions and duties of a specified office temporarily." 5 U.S.C. § 3347(a)(1)(A). But it prohibits an agency head from relying on a statute "providing general authority . . . to delegate duties

statutorily vested in that agency head" to designate temporary officers. *Id.* § 3347(b).

Several general delegation statutes apply to the Department of Justice. With a handful of exceptions, all functions of the Department are vested in the Attorney General. 28 U.S.C. § 509. The Attorney General may delegate his authority to "any other officer, employee, or agency of the Department of Justice." *Id.* § 510. The Attorney General is also authorized to appoint Assistant U.S. Attorneys, *id.* § 542, as well as special attorneys "to assist United States attorneys when the public interest so requires," *id.* § 543. The Attorney General may direct attorneys "specially appointed by the Attorney General under law" to "conduct any kind of legal proceeding . . . which United States attorneys are authorized by law to conduct." *Id.* § 515.

The government does not argue that those general delegation statutes allow the Attorney General to appoint Chattah as the U.S. Attorney or Acting U.S. Attorney. Such an appointment would be plainly contrary to section 3347(b). *See Gonzales & Gonzales Bonds*, 107 F.4th at 1078 ("[Section] 3347 clarifies that general vesting-and-delegation statutes are not sufficient to authorize the department to choose the acting officer under the FVRA."). Instead, the government argues that the Attorney General has delegated to Chattah "prosecutorial and supervisory authority in the District of Nevada" under section 515. That theory fares no better.

As a preliminary matter, the government argues that Chattah was delegated authority "in her capacity as First Assistant U.S. Attorney." This designation does not affect our analysis of Chattah's delegated powers. The title of "first assistant" was created by regulation in 1999 in response to

the passage of the FVRA. *Organization of the Department of Justice*, 64 Fed. Reg. 6526 (Feb. 10, 1999) (codified at 28 C.F.R. § 0.137). The only function of the first assistant *qua* first assistant is to be the Acting U.S. Attorney in the event of a vacancy. *See* 28 C.F.R. § 0.137(b). As explained above, Chattah cannot do this, so her designation as "first assistant" is not meaningful here.

The Attorney General's delegation to Chattah is unlimited. The Attorney General authorized Chattah to "conduct in the District of Nevada, any kind of legal proceedings . . . which United States Attorneys are authorized to conduct," and stated that Chattah "will have authority to serve as Acting United States Attorney." The Attorney General's order does not identify any specific duties Chattah may perform or identify any powers delegated to Chattah in her capacity as a special attorney, as opposed to powers that the Attorney General assumed the FVRA would provide her as the Acting U.S. Attorney. The Attorney General did not even include a "boilerplate limitation" stating that Chattah was not delegated any non-delegable powers, which has been used in some delegations in "an [unsuccessful] attempt to avoid running afoul of the FVRA." *Bullock v. United States Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112, 1126 (D. Mont. 2020). There is, in short, no way to understand the delegation here as anything other than an attempt to assign Chattah all the functions and duties of the U.S. Attorney.

We agree with the government that the Attorney General has broad authority to designate individuals "to perform certain functions and duties" of a vacant office. But the delegation to Chattah goes well beyond that. Nothing in the Attorney General's order suggests that Chattah was delegated only a share—even a large share—of the U.S.

Attorney's powers. A few cases have concluded or at least suggested that certain duties of the U.S. Attorney are not delegable. *See, e.g.*, *United States v. Weyhrauch*, 544 F.3d 969, 974–75 (9th Cir. 2008) (certification of interlocutory appeal from an order suppressing evidence under 18 U.S.C. § 3731); *United States v. Doe*, 98 F.3d 459, 461 (9th Cir. 1996) (certification to permit juvenile-delinquency proceeding under 18 U.S.C. § 5032); *In re Application for an Ex Parte Ord. to Authorize Disclosure of Tax Returns & Tax Return Info.*, No. 25-mc-22, 2026 WL 63331, at *3 (N.D.N.Y. Jan. 8, 2026) (authorization to seek order disclosing tax-return information under 26 U.S.C. § 6103(i)(1)(B)). But the government has taken the position in this case that *all* of the U.S. Attorney's functions and duties are delegable. In the context of these cases, therefore, we disagree with the government's assertion that "[t]he distinction between an acting official and one exercising a vacant office's powers by delegation is significant." In fact, the distinction is meaningless where, as here, an individual is delegated all the functions of an office that the government argues only has delegable functions.

The government relies on the Federal Circuit's statement in *Arthrex, Inc. v. Smith & Nephew, Inc.* that "the FVRA applies only to functions and duties that a [Senate-confirmed] officer alone is permitted by statute or regulation to perform" and "does not apply to delegable functions and duties." 35 F.4th 1328, 1336 (Fed. Cir. 2022). The court relied on the definition of "function or duty" set out in 5 U.S.C. § 3348, which governs when an action performed by an invalidly acting officer may be ratified. *Arthrex, Inc.*, 35 F.4th at 1335–36. But that definition, by its own terms, applies only to section 3348 and not to section 3347. 5

U.S.C. § 3348(a)(2). We therefore decline to apply it here. *See Giraud*, 160 F.4th at 405.

The import of the government's position is that Chattah can *be* the Acting U.S. Attorney, exercising all the functions and powers of that office, and the only effect of the FVRA is to prohibit her from calling herself "Acting U.S. Attorney." The Attorney General's unqualified delegation of all of the U.S. Attorney's functions and duties to a single person is precisely the kind of de facto appointment of an acting officer, premised on the Attorney General's "general authority . . . to delegate duties," that section 3347(b) prohibits. 5 U.S.C. § 3347(b); *see Gonzales & Gonzales Bonds*, 107 F.4th at 1078 n.7.

We need not decide what kinds of more limited delegations might be permissible in the absence of a Senate-confirmed U.S. Attorney. To resolve these cases, we hold only that that the Attorney General's authority to delegate does not permit him to vest all of the functions and duties of a vacant office in a single person. *See Giraud*, 160 F.4th at 406.

## III

The district court disqualified Chattah from participating in or supervising defendants' prosecutions, but it denied defendants' motions to dismiss their indictments. Defendants cross-appeal from the district court's order, arguing that dismissal is an appropriate remedy. We dismiss the cross-appeals for lack of appellate jurisdiction.

Federal courts of appeals "have jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C. § 1291. In general, a final decision is one that "ends the litigation on the merits and leaves nothing for the court to do

Case: 25-6465, 08/17/2026, DktEntry: 53.1, (35 of 36)



but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). But under the collateral-order doctrine, a "small category" of pre-judgment orders are treated as final and thus immediately appealable. *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995)); *accord Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint*, 514 U.S. at 42.

An order disqualifying government counsel is generally subject to immediate appeal under the collateral-order doctrine. *See Williams*, 68 F.4th at 570–71. But defendants do not argue that the collateral-order doctrine permits them to appeal the district court's order denying their motions to dismiss. *See Abney v. United States*, 431 U.S. 651, 663 (1977); *Giraud*, 160 F.4th at 396 n.2. Instead, they argue that we may review the denial of their motions to dismiss in conjunction with our review of the district court's order disqualifying Chattah. Although the scope of interlocutory jurisdiction is generally limited to the "precise decision independently subject to appeal," *Swint*, 514 U.S. at 50, they say that their cross-appeals are "inextricably intertwined" with or "necessary to ensure meaningful review of" the government's appeals, such that we have pendent appellate jurisdiction over them, *id.* at 51.

The scope of pendent appellate jurisdiction based on "inextricably intertwined" issues is "narrowly construed." *Meredith v. Oregon*, 321 F.3d 807, 813 (9th Cir. 2003), *amended*, 326 F.3d 1030 (9th Cir. 2003). To be inextricably

intertwined, "the legal theories on which the issues advance must either (a) be so intertwined that we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal, or (b) resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Id.* at 814 (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000)).

Those requirements are not met here. Whether Chattah was lawfully appointed the Acting U.S. Attorney under the FVRA or lawfully delegated the functions of that office does not tell us the remedy to which defendants are entitled for an unlawful appointment, and, conversely, we need not answer the remedial question to conclude that Chattah was not lawfully appointed. *See Gantt*, 194 F.3d at 998. Because "[r]eview of one order does not require review of the other," we lack jurisdiction over the cross-appeals. *CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1274 (9th Cir. 2021).

**AFFIRMED in part and DISMISSED in part.**